No. 23-1242

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

Matthew Meinen,
Plaintiff-Appellant,


vs.


Bi-State Development Agency,
Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Missouri (St. Louis)
Case. No. 4:22-cv-00620-JAR
The Honorable John A. Ross, United States District Judge

---

**APPELLANT'S PETITION FOR REHEARING EN BANC**

---

Douglas Ponder
PONDER ZIMMERMANN LLC
20 S. Sarah St.
St. Louis, MO 63108


ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

Table of Contents....…………………………………………………………………1

Table of Authorities....………………………………………………………………2

Statement Pursuant to Fed. R. App. P. 35(b)(1) ……..……………………………….3

Statement of the Case…………………………………………………………………5

Argument…………………………………………………………………….....14

    I.      The panel decision conflicts with a prior decision of this Court, namely <u>Wilson v. Ark. Dep't of Hum. Servs.</u>, 850 F.3d 368 (8th Cir. 2017)….. 14

    II.    This proceeding involves a question of exceptional importance, because the panel decision conflicts with the authoritative decisions of other United States Courts of Appeal that have addressed the issue of whether a party is required to cite to a specific case before the district court in order to preserve an issue for appeal………………………………………15

Conclusion…………………………………………………………………..16

Certificate of Compliance………………………………………………………...…17

Certificate of Service………………………………………………………..18

# TABLE OF AUTHORITIES

**Cases**

Alston v. Town of Brookline, 997 F.3d 23, 44 (1st Cir. 2021)……………………16

Metavante Corp. v. Emigrant Sav. Bank,
619 F.3d 748, 773 n.20 (7th Cir. 2010)…………………………………………...16

Morrow v. Greyhound Lanes, Inc., 541F.2d 713, 724 (8th Cir. 1976)………..……12

Shirrell v. St. Francis Med. Ctr.,793 F.3d 881 (8th Cir. 2015)……………………14

Templeton v. Jarmillo, 28 F.4th 618, 622 (5th Cir. 2022)………………………...16

United States v. Rapone, 131 F.3d 188, 196 (D.C. Cir. 1997)……………………16

United States v. Reed, 993 F.3d 441, 453 (6th Cir. 2021)………………….…16

Wells v. SCI Mgmt., L.P., 469 F.3d 697 (8th Cir. 2006)………………………14

Wilson v. Ark. Dep't of Human Servs.,
850 F.3d 368 (8th Cir. 2017)…………………………….………...3, 4, 12, 14, 15

## STATEMENT PURSUANT TO FED. R. APP. P. 35(b)(1)

This is a discrimination and retaliation case brought under Title VII by Appellant Matthew Meinen (hereinafter "Meinen") against his former employer Bi-State Development Agency (hereinafter "Bi-State"). Meinen brought four counts against Bi-State: Count I is for retaliation, Count II is for gender discrimination, Count III is for race discrimination, and Count IV is for hostile work environment.

Bi-State filed a Motion to Dismiss as to all four counts. The district court granted Bi-State's Motion to Dismiss, thereby dismissing all four counts. A panel of this Court affirmed the district court's dismissal of all four counts, with a dissent. As to Count I (retaliation), which is the only count at issue in this Petition for Rehearing, the majority determined that, even though Meinen had raised temporal proximity to establish causation before the district court and a prior case decided by this Court, Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017), was controlling as to whether Meinen had sufficiently pled temporal proximity, it would not consider Wilson because Meinen did not specifically cite that case before the district court. The dissent, however, indicated it would reverse the district court's dismissal of Count I, because Meinen: (i) pled temporal proximity, specifically a four-week gap between his protected activity and termination, (ii) argued temporal proximity before the district court in response to Bi-State's motion to dismiss, and thereby preserved the issue for appeal, and (iii) Wilson establishes that a six-week

3

gap between protected activity and termination is sufficient, standing alone, to plead causation.

Meinen petitions this Court for rehearing *en banc*, and respectfully submits the panel opinion is contrary to a prior decision of this Court, namely <u>Wilson v. Ark. Dep't of Human Servs.</u>, 850 F.3d 368 (8th Cir. 2017), such that consideration by the full court is necessary to secure and maintain uniformity of the Court's decisions. In addition, Meinen respectfully submits that this proceeding involves a question of exceptional importance, as the panel decision conflicts with the authoritative decisions of other United States Courts of Appeal that have addressed the issue of whether a party is required to cite to a specific case before the district court in order to preserve an issue for appeal.

## STATEMENT OF THE CASE

Bi-State is an inter-state compact formed between Missouri and Illinois in 1949, commonly referred to as METRO. (App. 64; R. Doc. 19, at 1.) Bi-State provides transportation services to the general-public throughout the St. Louis metropolitan area. (App. 64; R. Doc. 19, at 1.) Meinen began working for Bi-State in 2013. (App. 65; R. Doc. 19, at 2.) Meinen (Caucasian) worked in Bi-State's Public Safety Department as a Transit Security Specialist ("TSS") Lead. (App. 65; R. Doc. 19, at 2.) Meinen worked the night shift. (App. 65; R. Doc. 19, at 2.)

In early 2021, Meinen began enduring sexual harassment from a female TSS (African-American) working the day shift. (App. 65; R. Doc. 19, at 2.) For example, on several occasions this female TSS intentionally rubbed her backside on Meinen. (App. 65; R. Doc. 19, at 2.) Meinen reported this to his supervisor, as well as her supervisor. (App. 65; R. Doc. 19, at 2.) Shortly thereafter, Meinen was walking in the hallway in civilian attire and, when crossing paths with this same female TSS, she intentionally blocked Meinen's path and said: "you know you look good without clothes on, (pause…) I mean not in uniform." (App. 65; R. Doc. 19, at 2.) Meinen immediately told the female TSS's supervisor about this incident. (App. 65; R. Doc. 19, at 2.) Nonetheless, while all personnel from Meinen's night shift and the female TSS's day shift were gathered together in the squad room, the female TSS proceeded to tell everyone about the incident in the hallway (which she

5

called a "slip up"). (App. 66; R. Doc. 19, at 3.) Meinen then reported the incident, as well as the fact that she had broadcast it to everyone, to his supervisor. (App. 66; R. Doc. 19, at 3.) Several weeks later, again while all personnel from Meinen's night shift and the female TSS's day shift were gathered in the squad room, the female TSS stated to Meinen for everyone to hear: "it's not cheating if it's not in your race." (App. 66; R. Doc. 19, at 3.) Meinen again reported this incident to his supervisor, as well as her supervisor. (App. 66; R. Doc. 19, at 3.) Notwithstanding the numerous complaints/reports of misconduct submitted by Meinen, no investigation was ever conducted by Bi-State regarding any of the complaints/reports. (App. 67; R. Doc. 19, at 4.)

During the same time-period that Meinen was being harassed, specifically March 2021, a separate female TSS (Caucasian) working on a different night shift than Meinen submitted a complaint against another male TSS (Caucasian). (App. 66; R. Doc. 19, at 3.) Unlike Meinen's complaints, this complaint was investigated by Bi-State's EEO department, specifically Amy Krekeler-Weber. (App. 66; R. Doc. 19, at 3.) During the investigation, Krekeler-Weber interviewed Meinen as a potential witness. (App. 66; R. Doc. 19, at 3.) During this interview, Meinen informed Krekeler-Weber of the issues he himself had been enduring. (App. 66; R. Doc. 19, at 3.) Meinen asked Krekeler-Weber what he should do, and she told Meinen to write the harasser up, as Meinen was a Lead TSS. (App. 66; R. Doc. 19,

at 3.) Meinen then prepared a written disciplinary warning to the individual that was harassing him. (App. 66; R. Doc. 19, at 3.)

On or about May 17, 2021, Meinen was terminated, even though he was qualified in all aspects of his position, and throughout his employment Meinen met the expectations of his position. (App. 65 & 67; R. Doc. 19, at 2 & 4.) However, Meinen's harasser was not disciplined. (App. 66; R. Doc. 19, at 3.) Moreover, the decision-makers involved in Meinen's termination were aware of his complaints. (App. 67; R. Doc. 19, at 4.)

After receiving a Notice of Right to Sue from the EEOC, Meinen filed suit in Missouri State Court. (App. 65; R. Doc. 19, at 2.) On June 15, 2022, after Bi-State removed the case to federal court, Bi-State filed a Motion to Dismiss and supporting Memorandum. (App. 9-22; R. Doc. 7, at 1-2. & R. Doc. 8, at 1-12.) On August 10, 2022, Meinen, with leave, filed his First Amended Complaint. (App. 64-72; R. Doc. 19, at 1-9.) Therein, Meinen set forth four separate counts: Count I is for retaliation, Count II is for gender discrimination, Count III is for race discrimination, and Count IV is for hostile work environment. (App. 64-72; R. Doc. 19, at 1-9.) In addition, Meinen set forth the following as factual support for his claims:

12. Plaintiff was qualified in all aspects for the TSS position, and throughout his employment Plaintiff met the expectations of a TSS.

7

13. Plaintiff worked the night shift.

14. In early 2021, Plaintiff endured sexual harassment from a female TSS (African-American) working the day shift.

15. For example, on several occasions this female TSS intentionally rubbed her backside on Plaintiff.

16. Plaintiff reported this to his supervisor, as well as her supervisor.

17. Shortly thereafter, Plaintiff was walking in the hallway in civilian attire and, when crossing paths with this same female TSS, she intentionally blocked Plaintiff's path and said: "you know you look good without clothes on, (pause…) I mean not in uniform."

18. Plaintiff immediately told the female TSS's supervisor about this incident.

19. Nonetheless, while all personnel from Plaintiff's night shift and the female TSS's day shift were gathered together in the squad room, the female TSS proceeded to tell everyone about the incident in the hallway (which she called a "slip up").

20. Plaintiff then reported the incident, as well as the fact that she had broadcast it to everyone, to his supervisor.

21. Several weeks later, again while all personnel from Plaintiff's night shift and the female TSS's day shift were gathered in the squad

8

room, the female TSS stated to Plaintiff for everyone to hear: "it's not cheating if it's not in your race."

22. Plaintiff again reported this incident to his supervisor, as well as her supervisor.

23. During the same time period that Plaintiff was being harassed, specifically March 2021, a separate female TSS (Caucasian) working on a different night shift than Plaintiff submitted a complaint against another male TSS (Caucasian).

24. This complaint was investigated by the EEO department, specifically Amy Krekeler-Weber.

25. During the investigation, Krekeler-Weber interviewed Plaintiff as a potential witness.

26. During this interview, Plaintiff informed Krekeler-Weber of the issues he himself had been enduring.

27. Plaintiff asked Krekeler-Weber what he should do, and she told Plaintiff to write the harasser up.

28. Plaintiff then prepared a written disciplinary warning to the individual that was harassing him.

29. Plaintiff asked a fellow TSS Lead, Laquita Lowman, to accompany him when he served the disciplinary warning to his harasser, which she did.

30. Plaintiff's harasser admitted her misconduct, stating she was just joking.

31. To Plaintiff's knowledge, no investigation was ever conducted regarding Plaintiff's allegations against his harasser and no action was ever taken against her, other than the disciplinary warning issued by Plaintiff.

32. On or about May 17, 2021, Plaintiff was terminated based on false or pre-textual reasons.

33. The decision-maker(s) involved in Plaintiff's termination were aware of the previous complaints submitted by Plaintiff.

34. In addition, the male subject of the complaint filed by the female TSS in March 2021 was terminated as a result of the complaints levied against him.

(App. 65-67; R. Doc. 19, at 2-4.)

On August 24, 2022, Bi-State again filed a Motion to Dismiss and supporting Memorandum, arguing all four counts should be dismissed because, according to Bi-State, Meinen had not pled sufficient underlying facts to support the

elements of his claims, including the element of causation as to his retaliation claim set forth in Court I.  (App. 73-87; R. Doc. 20, at 1-2. & R. Doc. 21, at 1-12.)  On September 20, 2022, Meinen filed his Suggestions in Opposition.  (App. 88-93; R. Doc. 24, at 1-6.)  As to causation on the retaliation claim, Meinen argued, *inter alia*, temporal proximity, specifically stating: "Further, shortly after Plaintiff made his complaints, he was fired for a false reason." (App. 92; R. Doc. 24, at 5.)  Meinen then cited two district court cases to support his temporal proximity argument.  (App. 92; R. Doc. 24, at 5.)

On January 11, 2023, the district court granted Bi-State's Motion to Dismiss.  (App. 104-116; R. Doc. 26, at 1-12 & R. Doc. 27, at 1.)  As to causation on Count I, the district court first determined that there was "a temporal gap of approximately one month between Meinen serving his disciplinary warning and his termination."  (App. 109; R. Doc. 26, at 6.)  The district court then determined that this temporal gap was not close enough to allow an inference of causation.  (App. 109-110; R. Doc. 26, at 6-7.)

On February 6, 2023, Meinen filed his Notice of Appeal.  (App. 117-118; R. Doc. 28, at 1-2.)  The parties then submitted their respective briefs.  As to Count I, Meinen supported his argument by citing to, *inter alia*, <u>Wilson v. Ark. Dep't of Human Servs.</u>, 850 F.3d 368 (8th Cir. 2017).  <u>Wilson</u> held that a six-week gap between protected activity and termination is sufficient, on its own, to plead

causation in a retaliation claim.  Id. at 373.

On May 16, 2024, the panel decision was issued.  Therein, the majority assumed that Meinen engaged in protected activity when he issued a disciplinary warning to his harasser.  Op. 4, at n.2.  The majority also acknowledged that, under a favorable reading of the complaint, Meinen issued the disciplinary warning approximately four weeks before his termination.  Op. 4.  However, the majority still affirmed the dismissal of Count I.  In doing so, the majority refused to apply the Wilson holding, finding that Meinen waived his ability to rely on Wilson because he did not cite it to the district court.  Specifically, the majority stated:

> The dissent would reverse the district court's dismissal of Meinen's retaliation claim, citing our divided panel decision in Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 373 (8th Cir. 2017).  However, we cannot consider as a basis for reversal a ground for relief raised for the first time on appeal.  See Morrow v. Greyhound Lanes, Inc., 541F.2d 713, 724 (8th Cir. 1976) ("It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal.")  Because Meinen neither argued nor cited Wilson in his filings below, the district court did not consider whether Wilson provided a basis for his retaliation claim to survive.  The argument was not preserved for appeal.

Op. 4, at n.3.

On the other hand, the dissent indicated it would reverse the district court's dismissal of Count I. First, the dissent recognized that under <u>Wilson</u>, Meinen sufficiently pled causation by pleading a four-week gap between protected activity and termination. Specifically, the dissent noted: "Here, Meinen alleged a mere four weeks between his protected conduct and his termination, approximately two weeks closer than the six-week retaliation timeline in Wilson, and hence, easily close enough to create a sufficient of retaliation at the pleading stage." Op. 7. Next, the dissent noted that the majority's determination that Meinen waived the temporal proximity argument by not citing a specific case before the district court creates a new standard for preservation. Specifically, the dissent stated: "Failing to raise a 'ground for relief' is not the same as failing to cite a particular case." Op. 7. In addition, the dissent explained that the majority's approach runs counter to other circuits that have specifically rejected the notion that a particular case must be cited to preserve an argument for appeal. Op. 7-8.

**ARGUMENT**

**I.     The panel decision conflicts with a prior decision of this Court, namely <u>Wilson v. Ark. Dep't of Hum. Servs.</u>, 850 F.3d 368 (8th Cir. 2017).**

The elements of a retaliation claim under Title VII are well recognized. The plaintiff must show: (i) he engaged in protected conduct, (ii) he suffered an adverse employment action, and (iii) a causal connection exists between the two. <u>Wells v. SCI Mgmt., L.P.</u>, 469 F.3d 697, 702 (8th Cir. 2006). As to causation, the plaintiff must show but-for causation. <u>Shirrell v. St. Francis Med. Ctr.</u>,793 F.3d 881, 888 (8th Cir. 2015). One way to establish but-for causation is through temporal proximity, and this Court has recognized that temporal proximity alone can be sufficient to establish causation in a retaliation claim. Specifically, this Court determined that a six-week gap between protected activity and termination was sufficient to establish causation. <u>Wilson v. Ark. Dep't of Hum. Servs.</u>, 850 F.3d 368, 373 (8th Cir. 2017),

Here, Meinen pled temporal proximity, and argued it before the district court in response to Bi-State's motion to dismiss. The district court expressly noted an approximate four-week gap between Meinen's protected activity and termination, but still rejected Meinen's temporal proximity argument and dismissed Count I. Meinen then argued temporal proximity on appeal, but the majority affirmed the dismissal.

Based on the foregoing, the panel decision conflicts with a prior decision of this Court, namely <u>Wilson v. Ark. Dep't of Hum. Servs.</u>, 850 F.3d 368 (8th Cir. 2017). In <u>Wilson</u>, this Court held that pleading a six-week gap between protected activity and termination is sufficient to plead but-for causation in a retaliation claim. <u>Id.</u> at 373. Here, Meinen pled a four-week gap. Consequently, this Court should grant rehearing *en banc*, in order to secure and maintain uniformity of the Court's decisions.

**II.** **This proceeding involves a question of exceptional importance, because the panel decision conflicts with the authoritative decisions of other United States Courts of Appeal that have addressed the issue of whether a party is required to cite to a specific case before the district court in order to preserve an issue for appeal.**

As noted above, the panel decision conflicts with <u>Wilson</u>, as <u>Wilson</u> holds a six-week gap between protected activity and termination is sufficient to plead temporal proximity. The majority avoids this conflict by finding Meinen failed to preserve the issue (temporal proximity) for appeal, by not citing <u>Wilson</u> before the district court. Thus, the majority's reasoning requires a party to cite specific authority to preserve an issue for appeal.

As recognized by the dissent, this heightened standard, which essentially requires a party to cite every case that supports an argument, runs counter to numerous other circuit courts that have held citation to specific authorities is not required to preserve an issue for appeal. Specifically, the dissent referenced cases

from the First Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, and D.C. Circuit. See Alston v. Town of Brookline, 997 F.3d 23, 44 (1st Cir. 2021); Templeton v. Jarmillo, 28 F.4th 618, 622 (5th Cir. 2022); United States v. Reed, 993 F.3d 441, 453 (6th Cir. 2021); Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 773 n.20 (7th Cir. 2010); United States v. Rapone, 131 F.3d 188, 196 (D.C. Cir. 1997).

## CONCLUSION

For all of the foregoing reasons, Appellant respectfully asks the Court to grant his Petition for Rehearing En Banc.

Respectfully submitted,

PONDER ZIMMERMANN LLC

By     /s/Douglas B. Ponder
      Douglas Ponder
      20 S. Sarah St.
      St. Louis, MO 63108
      Phone: 314-272-2621
      Fax:  314-272-2713

Attorney for Appellant

# <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with Fed. R. App. P. 35(b)(2)(A).  Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 3354 words.  This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14 point font.

The undersigned further certifies that the petition has been scanned for viruses and is virus-free.

Respectfully submitted,

PONDER ZIMMERMANN LLC

By_____/s/Douglas B. Ponder_____
         Douglas Ponder
         20 S. Sarah St.
         St. Louis, MO 63108
         Phone: 314-272-2621
         Fax:  314-272-2713


Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2024, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Respectfully submitted,

PONDER ZIMMERMANN LLC

By_____/s/Douglas B. Ponder_____
Douglas Ponder
20 S. Sarah St.
St. Louis, MO 63108
Phone: 314-272-2621
Fax: 314-272-2713

Attorney for Appellant